# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 919 920 | **DATE** | Feb. 27, 2003 |
| **CASE TITLE** | Dan Seals v Compendia Media Group | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Hearing

(5) ☐ Status hearing

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Memorandum opinion and order entered. Defendant Compendia's motion to dismiss count I is denied and the individual defendants' motion to dismiss counts II and III is granted with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | FEB 2 8 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| GDS | courtroom deputy's initials | U.S. DISTRICT COURT | | |
| | | 03 FEB 27 PM 2: 51 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Document Number 42

DAN SEALS, a/k/a Danny W. Seals, individually, )
and d/b/a Pink Pig Music and Tour Data Corp., )
                                            )
                Plaintiff,           )
                                            )    No.    02 C 0920
      v.                             )
                                            )    Judge Robert W. Gettleman
COMPENDIA MEDIA GROUP, f/k/a Platinum )
Entertainment, Inc., successor in interest to )
Intersound, Inc., STEVEN DEVICK; DONALD R. )
JOHNSON; THOMAS R. LEAVENS; )
MICHAEL W. OLSEN; ANDREW FILIPOWSKI; )
and ROBERT MORGADO, )
                                            )
              Defendants.       )

## MEMORANDUM OPINION AND ORDER

In his third amended complaint, plaintiff seeks damages, injunctive relief and statutory attorneys' fees under the Copyright Act of 1976, 17 U.S.C. § 101, et seq., arising from defendants' alleged infringement of plaintiff's copyrighted musical works in connection with the sale and distribution of those works in the Philippines. Specifically, plaintiff asserts three claims: (1) direct and contributory copyright infringement against Compendia Media Group (Count I); (2) contributory copyright infringement against Steven Devick, Donald Johnson, Thomas Leavens, Michael Olsen, Andrew Filipowski, and Robert Morgado (together, the "individual defendants") (Count II); and (3) vicarious copyright infringement against the individual defendants (Count III). Compendia Media Group has moved to dismiss Count I under Fed. R. Civ. P. 8(a)(2) and 12(b)(6). The individual defendants have moved to dismiss Counts II and III for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the

reasons stated herein, the court denies Compendia's motion to dismiss Count I, and grants the individual defendants' motion to dismiss Counts II and III, with prejudice.

## **BACKGROUND**

Plaintiff Dan Seals, also known as Danny W. Seals, is the author of numerous musical works, including the album <u>In a Quiet Room</u> and several songs contained therein, such as "Big Wheels in the Moonlight," "Everything that Glitters (Is Not Gold)," "You Still Move Me," "One Friend," "They Rage On," and "Don't Believe I'll Fall in Love Again." In his third amended complaint, plaintiff alleges that he is doing business as, (1) Pink Pig Music, an unincorporated organizational entity and publisher of certain works owned by him, which facilitates music industry publication and licensing functions for those works, and (2) Tour Data Corporation, a Tennessee corporation of which plaintiff is the sole shareholder.[1]

In 1995, Dan Seals d/b/a Tour Data Corp. entered into an exclusive license agreement ("license agreement") with Intersound, Inc. The license agreement, which was attached to the complaint, granted Intersound the exclusive right, within the territory of the United States and Canada, to manufacture, distribute, license and sell in every way the works included on the album <u>In a Quiet Room</u>.

According to the third amended complaint, in 1997, Platinum acquired Intersound, including the rights and obligations of the license agreement with Seals. On July 26, 2000, Platinum filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and an

---

[1]In his third amended complaint, plaintiff asserts ownership of the copyright registrations for the aforementioned works, which were attached as Exhibit A to the complaint.

amended plan of reorganization became effective on October 10, 2001. Thereafter, Platinum changed its name to Compendia Media Group ("Compendia").

The individual defendants include former and current officers of Intersound, Platinum and Compendia. Only two of the individual defendants have worked directly for Intersound: Donald Johnson was President of Intersound from 1993 through 1997, and Michael Olsen was Intersound's Vice President and General Counsel from 1995 until 1996.

Olsen also held a multitude of positions with Platinum after his tenure with Intersound, and currently serves as the Chief Operating Officer of Compendia. Steven Devick was President and Chief Executive Officer ("CEO") of Platinum from 1995 until June 2000. Thomas Leavens was Platinum's General Counsel from 1995 through June 2000, as well as its Chief Operating Officer from 1995 until 1999.

Robert Morgado and Andrew Filipowski both served as members of Platinum's Board of Directors: Morgado served from January 1998 until September 2000, and Filipowski served from December 1991 until March 2000. In addition, Filipowski served as CEO and Chairman of Platinum from 1997 through 1999.

Plaintiff alleges that, in 1995, Intersound, at the direction of or with the knowledge and/or acquiescence of Devick, Olsen, Johnson and Leavens, made unauthorized duplications of plaintiff's original master works and graphic files for those works in the United States, for the purpose of providing those copies to DYNA Products, Inc. ("DYNA") in the Philippines. According to the third amended complaint, Intersound made the allegedly unauthorized copies for DYNA with full knowledge and intent that DYNA would further reproduce, distribute, and sell those reproductions for profit in the Philippines.

3

Based on information allegedly provided by officials at Platinum, plaintiff believes that DYNA has produced and sold more than 30,000 copies of plaintiff's works. Plaintiff alleges that Intersound/Platinum received, and Compendia continues to receive, payments from DYNA in connection with these sales. According to plaintiff:

> Platinum violated plaintiff's copyrights, contributed to the infringement by DYNA and now Compendia continues to infringe and contribute to the infringement of plaintiff's exclusive rights by providing copies of the master works and authorizing the use of those copyrighted works through the reproduction, distribution, performance, display and digital audio transmission of those works without permission or authorization from plaintiff.

Accordingly, plaintiff's third amended complaint seeks relief pursuant to the Copyright Act of 1976, 17 U.S.C. § 101, et seq. In Count I, which is directed at Compendia, plaintiff asserts claims of direct and contributory copyright infringement. Count II, against the individual defendants, seeks injunctive relief, damages and attorneys' fees for contributory copyright infringement. Last, in Count III, plaintiff asserts a claim of vicarious infringement against the individual defendants "for the infringing activities of Platinum, Compendia and DYNA."

Before addressing the defendants' motions to dismiss, the court pauses to provide some relevant procedural history regarding the instant dispute. Plaintiff filed his original complaint on February 7, 2002, approximately four months after Platinum's plan of reorganization became effective. On June 13, 2002, the bankruptcy court presiding over Platinum's reorganization entered the following agreed order ("bankruptcy order"),[2] which states in pertinent part:

> (B) Seals shall receive $5,000.00 as and for Seals' sole distribution under [Platinum's] Second Amended Joint Plan of Reorganization. Such payment shall be without prejudice to any claim or cause of action which Seals may have against the reorganized [Platinum]

---

[2] Although not appended to the complaint, the court takes judicial notice of the bankruptcy order.

4

for claims which arise post-confirmation or against [Platinum's] former officers and directors and shall not constitute a release of any party, nor shall it adversely affect the rights of any party, including but not limited to, rights of contribution, subrogation and indemnification, if any.

[...]

(D) Entry of this Agreed Order and the payment of $5,000.00 to Seals is without prejudice to... any legal rights or claims that the parties may have or may assert in the litigation in the United States District Court for the Northern District of Illinois in Case No. 02 C 0920.

With this background in mind, the court addresses the instant motions to dismiss below.

## DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

I. Compendia's Motion to Dismiss

In Count I, plaintiff asserts claims of direct and contributory copyright infringement against Compendia. Specifically, plaintiff alleges that "Platinum directly and contributorily infringed, and now Compendia continues to contributorily infringe on plaintiff's copyrighted works." In its motion to dismiss, Compendia asserts three separate grounds for dismissing Count I: (1) plaintiff cannot state a claim for contributory infringement because the infringing acts that Intersound/Platinum and Compendia allegedly authorized took place in the Philippines and were thus beyond the scope of the Copyright Act; (2) the bankruptcy order discharged all claims arising prior to October 10, 2001, and plaintiff has failed to allege a single act of copyright infringement that has occurred since October 10, 2001; and (3) plaintiff has failed to adequately

allege ownership of the copyrights at issue in the instant dispute. The court addresses each of these arguments below.

Section 501(a) of the Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 121... is an infringer of the copyright...." 17 U.S.C. § 501(a). According to Section 106, a copyright owner has the "exclusive rights to do and to authorize" six activities in particular, including reproducing the copyrighted work in copies or phonorecords, and distributing copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. 17 U.S.C. § 106 (1), (3).

A party who, with knowledge of infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory infringer.' Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971). The parties do not dispute that, in order to establish contributory infringement, plaintiff must establish a predicate act of direct infringement. See 3 DAVID NIMMER & MELVILLE B. NIMMER, NIMMER ON COPYRIGHT, § 12.04[A][3][a], at 12-91 (2002) ("[T]he rule should generally prevail that third party liability, as its name implies, may exist only when direct liability, i.e., infringement, is present.").

It is well-established that infringing acts that take place wholly outside the United States are not actionable under the Copyright Act. Subafilms, Ltd. v. MGM-Pathe Communications Co., 24 F.3d 1088, 1096 (9th Cir. 1994). This rule of extraterritoriality notwithstanding, the parties agree that if plaintiff can establish a predicate act of copyright infringement that occurred within the United States, he may be able to state a claim against Compendia under the Copyright

Act. See, e.g., Los Angeles News Service v. Reuters Television International, Ltd., 149 F.3d 987, 992 (9th Cir. 1998) (adopting rule that a party becomes liable for extraterritorial damages only when an act of infringement occurs within the United States, subjecting it to liability as an infringer (or contributory infringer) under the Copyright Act); Update Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d 67, 73 (2d Cir. 1988) ("As the applicability of American copyright laws over the Israeli newspapers depends on the occurrence of a predicate act in the United States, the geographic location of the illegal reproduction is crucial.").

In his response to the instant motions to dismiss, plaintiff maintains that Intersound/Platinum's alleged unauthorized reproduction of his works within the United States serves as a predicate act of direct infringement on which he may also hang a claim of contributory infringement. Plaintiff further alleges that Intersound/Platinum's alleged domestic authorization of DYNA's infringement in the Philippines, presumably through a licensing agreement, also constitutes infringement.

Contrary to plaintiff's assertion, domestic authorization of wholly extraterritorial infringement does not constitute an act of infringement that circumvents the extraterritoriality rule. See Subafilms, 24 F.3d at 1094 ("[W]e do not think Congress intended to hold a party liable for merely 'authorizing' conduct that, had the authorizing party chosen to engage in itself, would have resulted in no liability under the Act.") (Emphasis in original); National Football League v. Primetime 24 Joint Venture, No. 98C3778, 1999 WL 163181, at *4 (S.D.N.Y. March 24, 1999) ("Subafilms is correct insofar as it holds that 17 U.S.C. § 106 does not create an infringeable right of authorization independent of infringement of one of the specific enumerated rights set forth in that section."). Following the rule of Subafilms and its progeny, the court

concludes that Platinum's and/or Compendia's domestic authorization of infringement in the Philippines does not, in and of itself, state a claim for either direct or contributory infringement under the Copyright Act.[3]

Plaintiff's remaining allegation of domestic infringement - unauthorized copying that occurred in 1995 - is sufficient to state a claim against Compendia, however.[4] In Subafilms, the Ninth Circuit considered only whether acts of authorization consisting "solely of entering into licensing agreements," constituted copyright infringement. Subafilms, 24 F.3d at 1090, n. 2. The court did not consider allegations regarding domestic reproduction of copyrighted works that were then shipped abroad for distribution. Id. Such reproduction within the United States, when it leads to exploitation abroad of a copyright owner's works, is indeed actionable under the Copyright Act. See, e.g., Los Angeles News Service, 149 F.3d at 992 (holding that plaintiff was entitled to recover damages flowing from exploitation abroad of domestic act of infringement consisting of the reproduction of a copyrighted work, and that the Subafilms court's concerns were "inapplicable"); Update Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d at 73 (noting that

---

[3]Plaintiff directs the court to two district court cases that have rejected Subafilms and held that domestic authorization of wholly extraterritorial infringement constitutes infringement. See Curb v. MCA Records, Inc., 898 F. Supp. 586 (M.D.Tenn. 1995); Expediters Int'l v. Direct Line Cargo Management Services, Inc., 995 F. Supp. 468 (D.N.J. 1998). As Compendia points out, however, Curb and Expediters, which declined to follow Subafilms, are in the distinct minority. See Armstrong v. Virgin Records, Ltd., 91 F. Supp. 2d 628, 634 (S.D.N.Y. 2000) (noting that the line of cases holding that authorization of foreign infringement constitutes infringement has been repudiated and "it is now generally accepted that there can be no liability under the Copyright Act for authorizing an act that itself could not constitute infringement of rights secured by United States law").

[4]Because the court finds that reproduction within the United States is sufficient to state a claim under the Copyright Act, the court need not address plaintiff's allegations of infringement related to "[unauthorized] distribution within the United States."

8

unauthorized manufacture of copyrighted material in the United States is an exception to extraterritoriality rule).

Defendants maintain that the bankruptcy order, discussed earlier, discharged all claims for infringement that occurred before October 10, 2001, including the alleged unauthorized copying in 1995. Specifically, defendants direct the court's attention to Section (B) of the bankruptcy order, which provides:

Seals shall receive $5,000.00 as and for Seals' sole distribution under [Platinum's] Second Amended Joint Plan of Reorganization. Such payment shall be without prejudice to any claim or cause of action which Seals may have against the reorganized [Platinum] for claims which arise post-confirmation or against [Platinum's] former officers and directors and shall not constitute a release of any party, nor shall it adversely affect the rights of any party, including but not limited to, rights of contribution, subrogation and indemnification, if any. (Emphasis added.)

Notwithstanding defendants' arguments to the contrary, the court is not prepared at this stage of the case to conclude that Section (B) extinguished plaintiff's claim of copyright infringement stemming from the unauthorized copying in 1995. To begin, Section (B) explicitly provides that it does not constitute a release of any party, and shall not adversely affect the rights of any party. Moreover, other than generally referencing "Claim Number 391," the order does not specify the nature of Seals' claim in the bankruptcy proceedings. For all this court knows, the claim discharged in bankruptcy could have been a standard contract claim, devoid of any allegations of copyright infringement. This possibility is further bolstered by Section (D), conspicuously ignored by defendants, which states:

Entry of this Agreed Order and the payment of $5,000.00 to Seals is without prejudice to... any legal rights or claims that the parties may have or may assert in the litigation in the United States District Court for the Northern District of Illinois in Case No. 02 C 0920.

9

On its face, Section (D) appears to allow plaintiff to assert the very rights at issue in the instant dispute. Compelled to draw all reasonable inferences in plaintiff's favor, and staying within the four corners of the complaint, the court concludes that the bankruptcy order did not unequivocally discharge all claims of infringement predating October 10, 2001.

Compendia's third ground for dismissal of Count I also fails. Compendia directs the court's attention to the copyright registrations attached to plaintiff's complaint, and notes that ownership of these registrations was assigned to Pink Pig Music (and, in some instances, to Jack and Bill Music Company & Ranger Bob Music, as well), and disputes whether Tour Data Corp. and Pink Pig Music are properly characterized as Seals' alter egos. For example, according to Compendia, if Dan Seals is really "doing business as" Pink Pig Music, then he would not have assigned the ownership of the registrations to that entity, since he and Pink Pig Music would have been one and the same. Notwithstanding the potential merits of Compendia's arguments, on a motion to dismiss, the court is compelled to draw all reasonable inferences in plaintiff's favor and thus accepts plaintiff's allegations of ownership for the purposes of the instant motions.

Accordingly, Compendia's motion to dismiss Count I is denied.

II.     Individual Defendants' Motion to Dismiss

Counts II and III of plaintiff's third amended complaint assert claims of contributory and vicarious infringement against the individual defendants. The individual defendants have moved to dismiss these claims on three grounds: (1) no direct act of infringement occurred in the United States; (2) with respect to Count II, plaintiff failed to make specific allegations of knowledge and

10

participation by the individual defendants; and (3) with respect to Count III, plaintiff failed to make specific allegations of the individual defendants' right and ability to control the infringing activity. For the reasons stated below, the court is persuaded that plaintiff's allegations are insufficient under Fed. R. Civ. P. 12(b)(6) and thus concludes that Counts II and III should be dismissed with prejudice.

As the court noted in its discussion of Compendia's motion to dismiss, plaintiff has adequately alleged a predicate act of direct infringement in the United States. Nonetheless, the court concludes that plaintiff has not adequately alleged the other elements of his claims against the individual defendants. Plaintiff's failure to allege the individual defendants' knowledge of, as well as ability to control, the infringing conduct in the instant dispute, after four attempts, compels the court to dismiss his claims for contributory and vicarious infringement with prejudice.

As noted above, a defendant is liable for contributory infringement when, with knowledge of the infringing activity, he induces, causes, or materially contributes to the infringing conduct of another. Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971). On the other hand, a defendant is vicariously liable for copyright infringement when, (1) a defendant has the right and ability to supervise infringing conduct, and (2) that defendant has "an obvious and direct financial interest in the exploitation of copyrighted materials." Shapiro, Bernstein & Co. v. H.L. Freen Co., 316 F.2d 304, 307 (2d Cir. 1963). With these elements in mind, the court turns to plaintiff's claims of contributory infringement and vicarious infringement.

11

In his third amended complaint, plaintiff alleges that the unlawful copying was done "at the direction of or with the knowledge and/or acquiescence of [Intersound's] officers, Devick, Olsen, Johnson and Leavens." As the individual defendants point out, however, the allegedly unlawful copying occurred in 1995. At that time, only two of the individual defendants worked directly for Intersound: Donald Johnson was President of Intersound from 1993 through 1997, and Michael Olsen was Intersound's Vice President and General Counsel from 1995 until 1996. These facts, included in plaintiff's third amended complaint, belie plaintiff's allegation that Devick, Leavens, Filipowski, and Morgado had knowledge of, and contributed to, the allegedly unauthorized copying by Intersound in 1995, and thus defeat plaintiff's claim of contributory infringement against those individuals.[5]

As for Olsen and Johnson, both of whom were employed by Intersound during the relevant time period, plaintiff has not adequately alleged any facts to support his conclusion that they knew of, and induced, caused, or materially contributed to, the infringing conduct of Intersound. See DEV Industries, Inc. v. Rockwell Graphic Sys., Inc., No. 91C7197, 1992 WL 100908, at *3 (N.D.Ill. May 4, 1992) (noting that "personal liability for the wrongdoing of a corporation cannot be imposed upon an individual merely because that individual is an officer of the corporation," and dismissing complaint for unfair trade practices because plaintiff's allegations failed to implicate the defendant officers individually). Cf. The Drink Group, Inc. v. Gulfstream Communications, Inc., 7 F. Supp. 2d 1009 (N.D.Ill. 1998) (plaintiff's conclusory statements regarding individual officers' roles as "principal" and "driving force" behind

---

[5]It is worth noting that plaintiff did not address this aspect of the individual defendants' motion to dismiss in its response brief.

12

trademark infringements, standing alone, "run afoul of Plaintiff's obligation to adumbrate a claim with some supporting facts."). Thus, plaintiff has failed to state a claim against any of the individual defendants in Count II.

The aforementioned principles also defeat plaintiff's claim for vicarious infringement against the individual defendants. Indeed, plaintiff has failed to articulate any specific facts regarding either, (1) the individual defendants' rights and abilities to supervise infringing conduct, or (2) their obvious and direct financial interests in the exploitation of copyrighted materials. Accordingly, Count III is dismissed with prejudice.

### CONCLUSION

For the reasons stated herein, Compendia's motion to dismiss Count I is denied, and the individual defendants' motion to dismiss Counts II and III is granted with prejudice.

**ENTER:**      **February 27, 2003**

**Robert W. Gettleman**
**United States District Judge**

13