# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 920 | DATE | November 10, 2003 |
| CASE TITLE | Dan Seals v Compendia Media Group | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due____. Reply to answer brief due____.
(4) ☐ Hearing
(5) ■ Status hearing set for 11/19/03, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ____ set for ____ at ____.
(7) ☐ Trial[set for/re-set for] on ____ at ____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ____ at ____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Defendants' motion to dismiss is denied.

(11) ● [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| X | Notices mailed by judge's staff. | NOV 13 2003 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| GDS | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAN SEALS, a/k/a Danny W. Seals, individually, and d/b/a Pink Pig Music and TOUR DATA CORP., <br><br> Plaintiffs, <br><br> v. <br><br> COMPENDIA MEDIA GROUP, f/k/a Platinum Entertainment, Inc., successor in interest to Intersound, Inc.; DONALD R. JOHNSON and MICHAEL W. OLSEN, <br><br> Defendants. | No. 02 C 0920 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

On May 5, 2003, plaintiff Dan Seals filed his fourth amended complaint[1] for copyright infringement arising from allegedly unauthorized copying and distribution of his album In a Quiet Room. Specifically, plaintiff asserts a claim of copyright infringement and contributory copyright infringement against Compendia Media Group ("Compendia"), formerly known as Platinum Entertainment, Inc., successor in interest to Intersound, Inc. (Count I), as well as claims of contributory infringement and vicarious infringement against individual defendants Donald Johnson (Counts II and III) and Michael Olsen (Counts IV and V). Johnson and Olsen have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts II, III, IV, and V, arguing that, (1)

---

[1] In a memorandum opinion dated February 27, 2003, the court granted the motion of six individual defendants to dismiss with prejudice plaintiff's claims of contributory and vicarious copyright infringement against them, noting that plaintiff had failed to allege the individual defendants' knowledge of, as well as ability to control, the infringing conduct. Seals v. Compendia Media Group, 2003 WL 731369, at *6 (N.D.Ill. February 27, 2003) ("Seals I"). On April 17, 2003, in response to plaintiff's motion to reconsider that ruling, the court orally granted plaintiff leave to file a fourth amended complaint to rectify these pleading deficiencies.

plaintiff's claims of vicarious and contributory infringement against them are barred by the applicable three-year statute of limitations under the Copyright Act, 17 U.S.C. § 507(b), and (2) plaintiff has failed to adequately allege the "direct financial interest" element of his vicarious infringement claims against them. For the reasons stated herein, the court denies the individual defendants' motion to dismiss in its entirety.

## FACTS

According to his fourth amended complaint, plaintiff owns or co-owns all right, title and interest in and to the copyrights in the sound recording and musical compositions for "In a Quiet Room," "Big Wheels in the Moonlight," "Everything that Glitters (Is Not Gold)," "One Friend," "You Still Love Me," "They Rage On," and "Don't Believe I'll Fall in Love Again" (the "original works"). On July 11, 1995, plaintiff entered into an exclusive license agreement (the "license agreement") with Intersound, Inc., granting Intersound the right to manufacture, distribute, license and sell in every way, several of plaintiff's works, including the original works, in the territories of the United States and Canada. Johnson, then President and Chief Operating Officer of Intersound, negotiated and executed the license agreement with the aid, assistance, and counsel of Michael Olsen, Intersound's Vice-President and General Counsel.

Section 1(E) of the license agreement, which was attached as an exhibit to the fourth amended complaint, further provided that "Intersound shall have the right, with the Licensor's prior written permission, to distribute the album in countries other than the United States and Canada." Plaintiff alleges that he never granted permission for Intersound or its successors to copy, distribute, sell, offer to sell, perform or license plaintiff's copyrighted works, any master

2

work, use right, artist name and likeness or underlying right of the musical works therein, outside the United States and Canada.

According to the fourth amended complaint, in or about May 2000 plaintiff learned through his agent that: (1) Intersound had licensed DYNA Products, Inc. ("DYNA") the right to reproduce, sell and authorize broadcasts and public performances of plaintiff's copyrighted works in the Philippines; (2) officials at Intersound, and/or their employees under the direction and control of officers Johnson and Olsen, had copied plaintiff's works and delivered those copies to DYNA; and (3) Intersound and Platinum Entertainment, Inc. (which acquired Intersound in 1997) had received money in the United States from DYNA for royalty payments under the license. Plaintiff alleges that the unauthorized copies of his works were made in the fall of 1995 in Intersound's offices in Roswell, Georgia, and then transmitted to DYNA in the Philippines.

According to plaintiff, as early as November 1995 and continuing each quarter through August 1997, Johnson received quarterly sales reports and royalty statements from DYNA. Thereafter, Johnson allegedly assigned Olsen to receive royalty communications from DYNA. According to these reports, several of which were attached to the fourth amended complaint, Seals' In a Quiet Room was the number one best seller in the first and second quarters in 1996, as well as the fourth quarter of 1999. Moreover, the market survey section of the first quarter report from 1996 noted:

> The popularity of 'England Dan and John Ford Coley' in the 70's has snowballed to the advantage of 'Dan Seals' in the 90s. Familiar tunes have made the album a regular staple in radio - even bringing "I'd Really Love to See You Tonight" to number one in several stations. Songs from the album have also triggered a revival not only in radio, but also in music bars and loungts [sic] and television.

Between 1993 and 1999, Intersound allegedly received at least $110,000 in royalties from DYNA, which were paid in part for plaintiff's works that were sold in the Philippines. According to the fourth amended complaint, Intersound realized pure profit from these royalties, which were neither accounted for nor properly paid out.

Plaintiff alleges that Johnson participated and/or acquiesced in the active concealment of the sales by DYNA and the receipt of money in the United States from DYNA for those sales. Moreover, Olsen denied plaintiff's request to conduct an audit of Intersound's books and records in 1997 - which included a request to furnish plaintiff with a list of all companies that manufactured audio compact disc ("CDs") and cassettes for Intersound during the period July 1, 1995, through September 30, 1997 - contending that plaintiff's requests were "beyond the scope of the rights" granted by the licensing agreement.[2]

Plaintiff alleges on information and belief that Intersound was a subchapter S corporation. As such, its profits derived from unreported DYNA royalties allegedly flowed directly through to its shareholders, including Johnson (allegedly the majority shareholder) and Olsen.[3]

On July 26, 2000, Platinum filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and an amended plan of reorganization became effective on October 10, 2001. Thereafter, Platinum changed its name to Compendia Media Group ("Compendia"). Plaintiff

---

[2]The relevant section of the licensing agreement, Section 5(D), provides that "Licensor shall have the right... to examine Intersound's books of account relating to the subject matter of [the licensing agreement]. Intersound agrees that it will, at reasonable times, permit persons so designated by Licensor, in writing, to examine such books of account and manufacturing records at Licensor's expense."

[3]Plaintiff notes that if Intersound was a "C" corporation, the profits would be distributed to shareholders as a dividend.

4

alleges that DYNA continued to sell his copyrighted works after October 10, 2001, and that Compendia continues to receive payments from DYNA in connection with the unauthorized reproduction, distribution and sales of those works.

In Count I of his fourth amended complaint, plaintiff alleges that Intersound infringed, and Compendia continues to infringe and contributorily infringe, his exclusive rights in his copyrighted works in violation of 17 U.S.C. §§ 106(1)-106(6). In Counts II and IV, plaintiff alleges that Johnson and Olsen are liable for willful contributory infringement by copying plaintiff's works and then providing those works to DYNA for reproduction and distribution. In Counts III and V, plaintiff alleges that Johnson and Olsen are vicariously liable for the infringing activity of Intersound, Platinum, Compendia and DYNA.

Johnson and Olsen have moved to dismiss Counts II through V on statute of limitations grounds. In addition, they maintain that Counts III and V should be dismissed because plaintiff has not adequately pled the "direct financial interest" element of his vicarious infringement claims.

## DISCUSSION

Defendants have moved to dismiss Counts II through V for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under this Rule is to test the sufficiency of the complaint, not to rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts the factual allegations as true and draws all reasonable inferences favorable to plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). The consideration of a Rule 12(b)(6) motion is generally restricted to the pleadings, which include the complaint,

5

any exhibits attached thereto, and supporting briefs. Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753 (7th Cir. 2002).

1.  Statute of Limitations

Defendants argue that plaintiff's fourth amended complaint, filed on May 5, 2003, is time-barred because plaintiff's claims against them accrued in 1995. Plaintiff maintains that: (1) defendants waived their statute of limitations defense by not raising it in their previous motion to dismiss; (2) because of defendants' active concealment of their conduct, plaintiff did not learn of the alleged infringement until May 2000, and then timely filed his first complaint within the applicable statute of limitations; and (3) plaintiff's earlier-filed complaints served to toll the statute of limitations.

To begin, the court notes that defendants did not waive their statute of limitations defense. As the Seventh Circuit noted in Perry v. Sullivan, 207 F.3d 379 (7th Cir. 2000), there is no requirement under Rule 12 to affirmatively raise the statute of limitations defense by motion. Rather, Fed. R. Civ. P. 8(c) provides that a statute of limitations defense may be raised in a responsive pleading. Id. In the instant case, as in Perry, the individual defendants have not yet filed an answer, and therefore did not have the opportunity to raise their affirmative defenses under Rule 8(c). Accordingly, the court will entertain defendants' statute of limitations arguments.

Having said that, for the reasons stated below, the court concludes that defendants' statute of limitations defense is without merit. The Copyright Act provides for a three-year statute of limitations. 17 U.S.C. § 507 (b). In Taylor v. Meirick, 712 F.2d 1112, 1117-1118 (7th Cir. 1983), the Seventh Circuit held that the statute of limitations in a copyright action is tolled "until

the plaintiff learned or by reasonable diligence could have learned that he had a cause of action." Moreover, the court added that "there is no doubt that the copyright statute of limitations is tolled by fraudulent concealment of the infringement." Id. (internal quotations and citations omitted).

According to plaintiff's fourth amended complaint:

> In or about May 2000, plaintiff, through his agent, was advised by officials at Platinum that its predecessor in interest, Intersound, had licensed the right to reproduce, sell and authorize broadcasts and public performances of plaintiff's copyrighted works in the Philippines; that officials at Intersound, and/or their employees under the direction and control of officers Johnson and Olsen had copied plaintiff's works and delivered those copies to DYNA; and that Intersound and Platinum had received money in the United States from the Philippine licensee, DYNA for royalty payments under the license.

As defendants point out, plaintiff did not explicitly allege that May 2000 was the "first time" that he learned of the alleged infringing conduct. Nonetheless, the court concludes that this allegation is sufficient to establish, for the purposes of defendants' motion to dismiss, that plaintiff had not known of the infringing conduct earlier. Defendants' argument that this is not a "fair reading" of plaintiff's fourth amended complaint ignores the court's obligation to draw all reasonable inferences in plaintiff's favor in evaluating the instant motion.

Defendants next argue that plaintiff has failed to allege any nexus between his alleged failure to receive royalty statements and his inability to learn of the allegedly infringing conduct prior to May 2000, and that, in any event, the alleged failure to provide information does not amount to "active concealment." The court disagrees. Plaintiff's fourth amended complaint alleges that, as early as 1997, he requested an audit of Intersound's books and records, including a request to furnish plaintiff with a list of all companies which manufactured CDs and cassettes for Intersound during the period July 1, 1995, through September 30, 1997. Olsen refused to

7

comply with plaintiff's request. Moreover, the fourth amended complaint alleges that defendants received royalties from DYNA stemming from sales of Seals' work in the Philippines, as well as quarterly reports of those sales, and then failed to account for or report any of those sales to Seals when paying royalties due under the agreement. Drawing all reasonable inferences in plaintiff's favor, these allegations are more than adequate to establish that defendants' active concealment of their sales of plaintiff's works in the Philippines prevented plaintiff from learning of their infringing conduct prior to May 2000.

Plaintiff filed his original complaint in the instant case in February 2002, well within the three-year statute of limitations that began running in May 2000.[4] Contrary to defendants' argument, the fact that this court subsequently dismissed plaintiff's first, second, and third complaints does not render the fourth amended complaint, filed on May 5, 2003, untimely. Fed. R. Civ. P. 15(c)(2) provides that an amendment of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Defendants do not dispute that plaintiff's fourth amended complaint arose out of the same conduct dealt with in plaintiff's original complaint. Thus, plaintiff's fourth amended complaint relates back to February 2002, when his original complaint was timely filed.

Elmore v. Henderson, 227 F.3d 1009 (7th Cir. 2000), does not compel a contrary conclusion. In Elmore, the Seventh Circuit held that "when a suit is dismissed without prejudice,

---

[4] In their supplemental memorandum, defendants point to plaintiff's responses to their interrogatories as evidence that plaintiff knew that copies of In a Quiet Room were being sold in the Philippines as early as October 1999. Even assuming arguendo that the three-year statute of limitations began to run in October 1999, rather than May 2000, plaintiff's first complaint, filed in February 2002, would still be timely filed.

the statute of limitations is deemed unaffected by the filing of the suit, so that if the statute of limitations has run the dismissal is effectively with prejudice." Id. at 1011. The Elmore holding is inapposite, however, because the instant suit has never been dismissed, with or without prejudice.

For these reasons, the court concludes that plaintiff's fourth amended complaint was timely filed. Defendants' motion to dismiss the fourth amended complaint on statute of limitations grounds is therefore denied.

2. Direct Financial Interest

In Seals I, the court dismissed plaintiff's claims of vicarious infringement with prejudice because plaintiff "failed to articulate any specific facts regarding either, (1) the individual defendants' rights and abilities to supervise infringing conduct, or (2) their obvious and direct financial interests in the exploitation of copyrighted materials." In an oral ruling on April 17, 2003, the court granted plaintiff's motion to reconsider its dismissal of plaintiff's claims against the individual defendants in Seals I and granted him leave to file a fourth amended complaint. In granting that motion, however, the court noted:

> I'm conditioning [this decision] on the understanding of two things. Number one, if I grant another motion by these [individual] defendants to dismiss, it will be with prejudice, no questions asked.... Number two, if I grant that motion in the face of these papers that I have reviewed in connection with my ruling today, I will award attorney's fees against the plaintiff and in favor of the individual defendants, and we'll deal with the extent of those fees should that be the case.

Defendants maintain that plaintiff's fourth amended complaint has not sufficiently alleged that Johnson and Olsen had a "direct financial interest" in the alleged infringement, and that they are therefore entitled to their attorneys' fees. The court disagrees.

According to the fourth amended complaint, Johnson and Olsen supervised and/or directed the allegedly unlawful copying of plaintiff's works in 1995, and both Johnson and Olsen actively concealed the subsequent sales of those works in the Philippines by failing and refusing to account for and pay royalties owed to plaintiff under the agreement. Plaintiff has further alleged that Johnson and Olsen were both shareholders and officers of Intersound, and that the profits derived from the allegedly infringing sales in the Philippines passed through to them. These allegations are adequate to state a claim for vicarious infringement.

In Broadcast Music, Inc. v. Hartmarx Corp., 9 U.S.P.Q.2d 1561, 1562-63 (N.D.Ill. 1988), for example, the plaintiff alleged that the defendant was vicariously liable for allegedly infringing public performances of copyrighted musical compositions at two subsidiary stores that were 100%- and 92%-owned by defendant. In that case, Judge Plunkett held that the defendant parent company had a direct and obvious financial interest in the alleged exploitation of copyrighted materials by its subsidiaries. In reaching that conclusion, the court reasoned that the two subsidiaries presumably played the infringing music to create a more attractive environment for their customers and make greater profits, which would flow to the defendant. Id.[5]

Similarly, in Luft v. Crown Publishers, Inc., 772 F. Supp. 1378, 1379-80 (S.D.N.Y. 1991), the court held that an individual defendant, who was president of and had a 65% ownership interest in a corporation, was vicariously liable for that corporation's copyright

---

[5]Contrary to defendants' representation to the court, Goes Lithography Co. v. Banta Corp., 26 F. Supp. 2d 1042 (N.D.Ill. 1998), did not reject the Hartmax court's analysis of the direct financial benefit prong of the vicarious liability test. Rather, Goes Lithography Co. declined to adopt the Hartmax court's holding that a parent company's power to supervise and control infringing conduct of a subsidiary may be inferred solely from the parent-subsidiary relationship. Goes Lithography Co., 26 F. Supp. 2d at 1045.

infringement. Defendants attempt to distinguish Luft by arguing that "in Luft... [the individual defendant] directly supervised the manufacture, distribution and sale of the infringing recordings. No such facts are alleged as to the individual defendants in this case." While the court acknowledges that the facts of the instant case are distinguishable from Luft in certain respects, these differences do not merit granting defendants' motion to dismiss.

Although plaintiff in the instant case does not allege that defendants directly supervised the distribution of plaintiff's copyrighted works, the fourth amended complaint does allege that defendants supervised and directed the copying of plaintiff's works and delivered those copies to DYNA in the Philippines, essentially setting the alleged infringement in motion. Taken together with plaintiff's allegations that the individual defendants knowingly concealed royalties derived from subsequent sales of plaintiff's copyrighted works in the Philippines for several years, and then, as shareholders, profited from these royalties, the court concludes that plaintiff's allegations are sufficient to state a claim for vicarious copyright infringement.

Sofitel, Inc. v. Dragon Med. and Scientific Communications, Inc., 118 F. 3d 955 (2d Cir. 1997), does not compel a different result. In Sofitel, the Second Circuit affirmed the dismissal of an individual defendant at the close of plaintiff's case because the evidence that the defendant was president and shareholder of five-employee company was "too attenuated to establish a sufficiently 'direct' financial interest in the exploitation of copyrighted materials." Id. at 971. The instant case, in contrast, remains at the pleading stage, and the court finds that dismissal of plaintiff's claims of vicarious infringement would be premature. Of course, it remains to be seen whether, with the benefit of discovery, plaintiff will be able to demonstrate the extent, if any, of the "direct" benefit received by the individual defendants.

The court thus denies defendants' motion to dismiss Counts III and V, as well as defendants' request for attorneys' fees.

## **CONCLUSION**

For the reasons stated herein, defendants' motion to dismiss is denied. The parties are directed to appear for a status report on November 19, 2003, at 9:00 a.m.

**ENTER:** **November 10, 2003**

**Robert W. Gettleman**
**United States District Judge**